The next case today is Miriam Ixcuna-Garcia v. Merrick B. Garland, Appeal No. 17-1867. Attorney Kelly, please introduce yourself for the record and proceed with your argument. May it please the Court, my name is Nancy Kelly and I represent the petitioner Miriam Ixcuna-Garcia. Good morning. At the outset, I'd like to request to reserve one minute for rebuttal. Okay. Your Honor, this case involves a young indigenous Mayan Guatemalan woman who entered the U.S. at the age of 16 unaccompanied. She grew up during the Guatemalan Civil War when her community was the subject of a genocide and she presented evidence to the court of ongoing systemic mistreatment throughout her life based upon her race, her ethnicity, and her gender. This included evidence that she presented or testimony that she presented in a remanded hearing that she had been targeted and attacked as a teenager and that she had been raped at the age of 10 by a Latino man. The government has requested that this court should remand the case for consideration of Ms. Ixcuna-Garcia's application for withholding of removal based on past persecution. We join in that request, but we ask the court to remand the case for a full consideration of all of the evidence that was presented by Ms. Ixcuna-Garcia, including that evidence presented at the remanded hearing, and for a reconsideration of her eligibility for both asylum and for withholding of removal. We set out several errors committed by the court in this case, but the one that I'd like to address first is the immigration court and the board's failure to meaningfully consider the psychological evaluation submitted by Margarita Richitsky regarding Ms. Ixcuna-Garcia. That evaluation is critical to several aspects of the case. First, it's critical to the question of whether the evidence presented by Ms. Ixcuna-Garcia in her remanded hearing met the motion to reopen and should therefore have been considered. Ms. Kelly, the IJS indicated that that evidence wasn't deserving of significant weight, which means that it weighted, but it just didn't give it the weight that your client wanted it to be given. Your Honor, the immigration judge indicated that he was not giving it significant weight, but he never mentioned in any detail or any depth the findings of that or how they impacted on the case. The expert testimony... Well, does our case law say that the IJS has to explicate extensively? Your Honor, the IJS is entitled to give evidence minimal weight, but he can't do so in violation of the law and he can't do so without considering the substantial evidence before him. In this case, the immigration judge determined that the evaluation was not to be given significant weight based on two factors. First, he said that Ms. Richitsky was not a psychologist or a psychologist, but rather that she was only a registered nurse. So he effectively made a finding that she was not qualified to give that evaluation. That's not necessarily what it means. He didn't say she was unqualified. Presumably, if he had an affidavit from a psychiatrist and you had an affidavit from a nurse, the medical profession itself would tell us that perhaps the former was worth more weight than the latter. Your Honor, the first thing that he did is he grossly misstated her qualifications. He referenced her as being a registered nurse, but she's in fact a clinical nurse specialist. She has a master's degree specializing in adult mental health and psychiatric clinician. She has 45 years of experience as a nurse and 30 of those years she has been working with refugees. She's conducted hundreds of evaluations. She has trained clinicians nationally and internationally on conducting these evaluations. She has an extensive history in dealing with survivors of trauma. The standard to determine whether somebody will be qualified as an expert is set out in Federal Rule of Evidence 702. But I go back. I think you're evading the point. He did not say she was unqualified. He gave it some weight. He just refused to give it significant weight. And doesn't an IJ have ample opportunity to do that? But if he is to give it less weight, he should state a reason for that that should be grounded in the law or in the facts of the case. In this case, he was not looking at her full credentials and her full experience. The Federal Rule of Evidence 702 indicates that an individual can be qualified as an expert based on knowledge, skill, experience, training or education. Here, he focused solely on education, disregarding a lifetime of experience and skill and knowledge. Even on that, I guess I'm not quite with you. He referred to her as a clinician and presumably he read her affidavit, which recited her qualifications, and he didn't find her unqualified. So why should we be able to say that he ignored her qualifications? Your Honor, he admitted the affidavit onto the record. There was no objection made by the government. There was no questioning by the immigration judge. It was not until the decision itself when he indicated that he would not give this piece of evidence, which was critical to several aspects of her case, significant weight. The Board of Immigration Appeals, in reviewing it, simply said that that evaluation was not dispositive to all aspects of the credibility of her case, indicating from their perspective that in order to be meaningfully considered, it would need to have been dispositive. It would need to, but for the... Well, that's because they pointed to other inconsistencies aside from the ability to talk about the rape. In this case, Your Honor, the evaluation was offered specifically to explain those inconsistencies. And so it went to the heart of her ability to present evidence and to meaningfully develop her case effectively with the immigration judge. But she indicated upon first arrival that she had never been harmed in Guatemala and wasn't afraid. That doesn't take into account the non-rape attacks. Why she would say that in light of the fact that she and her cousin had been attacked but not raped. Your Honor, the evidence, the evaluation, goes into great detail in the factors that interfered with her ability to give a full accounting of what happened to her prior to leaving Guatemala. The case needs to be considered in context. This is a young woman who was suffering from post-traumatic stress disorder, major depression. She had been through essentially an entire childhood of fear and severe discrimination. Her testimony was that she had been raped at age 10. The targeting that she experienced as a teenager and the attempted assault on her as a teenager, her response and her ability to be able to talk about those was tied to the trauma that she experienced. Those were sexual. She was sexually assaulted. She was then targeted and accused of being essentially a prostitute. Counsel, that's time. Any other questions, colleagues? Thank you, Ms. Kelly. Attorney Kelly, thank you. Please mute your audio and video. Attorney Wright, please unmute your audio and video. Can you hear me? Yes, thank you. You may proceed with your argument. Good morning. May it please the Court, my name is Jocelyn Wright. I'm here on behalf of Respondent, the United States Attorney General. I'd like to start by clarifying because Petitioner's argument before the Court today is solely on the due process, the allegation of the due process violation based on the psychological evaluation. But I think what's getting lost here is that the psychological evaluation really only goes to the adverse credibility. So to the extent that she is somehow trying to import it to the one-year bar, the asylum claim, I think that, for clarity, I think that has to be rejected. Because I remind the Court that the Immigration Court denied the asylum claim as untimely, and the Board in 2011, and the Board affirmed that in 2013. The affidavit itself, the psychological evaluation, was not even produced until 2014. So the Board and the Immigration Judge could not have taken into account the psychological evaluation because it wasn't even in existence. And as we've argued, the one-year, the timeliness, denial of asylum based on the time bar is not subject to review. Now, on remand, Petitioner brought the psychological evaluation in an effort to revisit the denial of asylum. The Board and the Immigration Judge considered the affidavit, but determined that reopening on that, I'm sorry, reconsideration of the asylum claim as not being time barred, or the issue of asylum, wasn't warranted because the affidavit was something that could have been produced before, but wasn't. Given that she had cancelled during the 2011 merits hearing, and she was claiming all the allegations of childhood trauma, not necessarily the rape, but the difficult childhood, the difficulties with English, the isolation in the community, all of those things had already, and all part of the PTSD depression analysis, had already, was already something that she was suffering from in 2011, and because counsel at that time could have produced a psychological evaluation if that was necessary. I'm unclear on something. When the BIA says that the psychiatric evaluation was not dispositive, what was the context of that statement? What does it mean? Well, the Board of Immigration Appeals at that point was saying that reconsideration was not warranted because she hadn't met the requirements for reopening. One of which is that the evidence sought to be admitted for the basis for reopening has to be material and previously unavailable. And then to the extent that she is saying that because of the claims that I have, I have a new basis for asylum, I think the Board was saying to that extent, the affidavit doesn't necessarily provide a basis for saying you're prima facie eligible or that you have new claims that warrant reopening for us to hear. Because the psychological evaluation simply could have been produced before. But again, that... Well, a psychological evaluation could have been produced before. It's not clear that such an evaluation would have included allegations of rape if it took her some time to be able to talk about it, independent of a psychological evaluation. Understood, Your Honor. But the allegations of rape didn't go to the timeliness of the asylum claim itself, of her being able to apply for asylum within the one-year bar. The PTSD was what she was saying prevented her from applying within the one year or within a reasonable time. And that existed in 2011. Could you help me with one thing? It seems that the immigration judge arrived at an adverse credibility finding concerning her testimony for a series of reasons that it listed collectively. And one of those reasons was that the respondent explained, did not produce an affidavit from her mother to corroborate her account. I thought that it was pretty clear under matter of LAC and under our opinion in Melina Diaz that if the IJ is going to base an adverse credibility finding on a failure to corroborate, then there must be given some opportunity to explain the failure to corroborate. Five minutes. Those cases are applicable, or that proposition stands, when there is no explicit adverse credibility finding by the immigration judge, Your Honor. It has to be independent of the lack of corroboration. And as I read the IJ's report, the adverse credibility finding is based in part on the lack of corroboration. Well, what the IJ said is, your testimony was not credible. It said, for these reasons, I'm quoting, for these reasons, the immigration court will not credit those portions of respondent's testimony. So I asked, well, what are these reasons? And listed right above that statement, the last listed reason is the lack of an affidavit of corroboration from the mother. Right. And I think that's consistent with the court's decision in Zeru, which is something that has been on the books since 2007 or 2008. And that is where the court said the burden of persuasion and the burden of proof rests at all times with the applicant for relief. We're not talking about the burden of proof, but our opinion in Melina Diaz says, if you're basing the credibility finding on lack of corroboration, you've got to give the person a chance to explain the absence of the corroboration. But again, that duty, that opportunity, even under LAC, matter of LAC, only arose in the context of the immigration court not making an explicit adverse credibility finding. In other words, the immigration judge said, I'm not sure whether your testimony, isn't sufficiently persuasive, so I'm going to look at the corroborating evidence. And I think your testimony could be rehabilitated. Your credibility could be more persuasive if I had this corroboration and I don't see it here. Well, that's what the IJ said, but that's not what the IJ said. The IJ said what I just read. Right. And I'm saying that LAC and Melina Diaz applies to the situation where there is no explicit adverse credibility finding. But here the immigration judge said, I don't believe your testimony. And I'm looking to see whether or not, given that I have questions about your testimony and your credibility, the veracity of your claim is in question. I'm going to look to the corroborating evidence and there isn't any. Let's be clear about this. Are you actually saying that if an IJ says, I find adversely to you on your credibility and the reasons that I find adverse to you include the lack of corroboration, that the IJ need not provide an opportunity to explain the lack of corroboration? Is that what you're saying? Yes, and that would be ZERU, Your Honor. ZERU stands for that proposition. Well, how do you reconcile that with Melina Diaz? Well, we seem to have said the opposite. Again, because in Melina Diaz, there was no explicit adverse credibility finding. And in ZERU, there was, as well as in this case. You keep talking about an adverse credibility finding, but that's not precise enough. It has to be an adverse credibility finding that's independent of the lack of corroboration. Otherwise, you've eliminated the rule altogether. Well, no, her testimony was so different from what she had previously stated. The claims were completely inconsistent. In 2011, she said, I was not afraid when I left Guatemala. I learned to be afraid once I came here and started talking to my mother and found out about all these other things. And she also said that she was never harmed or mistreated while she was in Guatemala. Now, her claim in 2016 was completely different. She was saying, no, actually, I was raped. I was assaulted. I was harassed. I was threatened. Now you argue the merits, but I'm asking you about the law. It isn't the simple bottom line here that if the absence of corroboration leads to the conclusion that there's no credibility, then you've got to give someone an opportunity to at least explain the absence of corroboration before you conclude adversely to them based on that absence of corroboration. But again, Your Honor, her credibility was already at issue, given the stark differences in her claim. At issue isn't the issue. It's was it credible or not. He says not. The reason included the lack of corroboration. Well, and again, I would point the court to Zeru, where the court said that requiring the immigration judge to say, I don't find you credible, therefore you need to give me corroboration and here's an opportunity for you to do it. The court explicitly rejected that requirement as unusual and unnecessary. Attorney Wright, I mean, the problem is that there are these other inconsistencies that the IJ could easily have cited. But he threw in lack of corroboration, which is the problem that gets us here. And from a policy perspective, it's the immigrants' failure to provide corroborating evidence when reasonably able to do so. So it's not just failure to provide. You know, we're talking about a situation in these cases involving indigenous people from this country have been before us before. So we're very aware of the brutality of the civil war that existed and what the indigenous people went through. So you're talking about if reasonably able to do so, you're asking dirt poor immigrants who are the brunt of all kinds of discrimination in Guatemala to be able to figure out how to even provide corroborating evidence. You know, going to notaries, spending money on translations, which is why the reasonably able to do so makes sense. So I just want you to know that this is problematic for at least one panel member. That's time. Thank you, Your Honor. May I respond briefly? Yes. I do remind the court that in this case, the record reflects the petitioner was completely aware of her obligation to provide corroborating evidence as early as 2011. She said, I didn't make certain allegations because I had no proof to corroborate them. But all along, she has been aware of her burden and her obligation. She was presented by counsel at all times. Counsel was very competent and had submitted voluminous corroboration. Well, aren't there corroborating witnesses in the United States? The ones who support it? Yes. Is that the difference between people in the United States going to a notary and people in Guatemala figuring out a legal system? And that the contrary reports say it discriminates against them. And my response to that is, again, she had counsel. And moreover, she has never made that – she has never proffered that explanation to either the immigration judge or to the board, that that was the stumbling block to her ability to – her failure to corroborate that aspect of her claim with her mother's affidavit or a letter or anything like that. Unless the court has any further questions. Thank you. Thank you, counsel. Thank you, Attorney Wright. Please mute your audio and video. Attorney Kelly, please unmute your audio and video and proceed with your one minute of rebuttal. Your Honor, first I'd like to point out there are two decisions of the Board of Immigration that were issued subsequent to briefing in this case. And we did submit a 28-J letter on those cases. One is a matter of MAMZ. The second is a matter of JGT. And both of those address the use of expert witnesses in immigration hearings. In a matter of MAMZ, the board specifically said that when an immigration judge makes a factual finding that is not consistent with an expert's opinion, it is important that the immigration judge explain the reasons behind the factual finding. So there was an obligation on the part of the immigration judge to give a clear reason why he rejected or gave little weight to the findings of the expert in this case. With regard to the testimony available, Ms. Espuna-Garcia did present to... Counsel, that's time. Thank you, Ms. Kelly. Thank you. Thank you. That concludes argument in this case. Attorney Kelly and Attorney Wright, please disconnect from the hearing at this time.